UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX T. OWEN,<br><br>    Petitioner,<br><br>    v.<br><br>MARION SPEARMAN,<br><br>    Respondent. | Case No. 13-cv-03764-VC  (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING PETITIONERS' MOTIONS AND DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. Nos. 29, 30 |

**INTRODUCTION**

Alex T. Owen has filed a federal habeas petition challenging the validity of his conviction, following a jury trial, of two counts of second degree robbery. He claims he was denied the right to effective assistance of trial counsel because his lawyer failed to challenge a "tainted identification" based on a witness's "pre-trial encounter" with him, and failed to investigate an allegedly fabricated police report. He also claims his appellate counsel was ineffective for failing to raise the allegedly tainted identification in his appeal. Because neither counsel provided ineffective assistance, the petition is denied.

**BACKGROUND**

On March 22, 2010, a San Mateo County jury convicted Owen of two counts of second degree robbery. Clerk's Transcript ("CT") 127, 130-31. On April 19, 2010, the court sentenced Owen to eleven years in prison. CT 294-95, 307.

On May 23, 2011, the California Court of Appeal affirmed the judgment in a written, unpublished decision. Exh. D, *People v. Owen*, A128572 (Cal. Ct. App. May 23, 2011). On August 10, 2011, the California Supreme Court summarily denied review. Dkt. No. 1-1 at 9.

Owen timely filed a petition for a writ of habeas corpus in the San Mateo County Superior Court, which was denied in a written, unpublished opinion on March 18, 2013. Doc. 1-1 at 11, *In re Owen on Habeas Corpus*, HC-2360 (Cal. Super. Ct. Mar. 8, 2013). Owen filed petitions for a

1  writ of habeas corpus in the California Court of Appeal, A138318, and the California Supreme
2  Court, S210806, which were summarily denied. Exh. F.
3      On August 13, 2013, Owen filed this federal petition for a writ of habeas corpus, which is
4  now fully briefed on the merits. Owen has also filed motions to appoint counsel and for an
5  evidentiary hearing, which will be denied.
6      The state court of appeal summarized the facts as follows:
7      On November 25, 2009, Owen robbed a Wells Fargo Bank branch and, on December 23,
8  2009, Owen robbed a Citibank branch. At each robbery, Owen gave a bank teller a note indicating
9  that he was robbing the bank.
10     Owen robbed the Wells Fargo Bank at approximately 3:30 p.m. After receiving Owen's
11 note, the Wells Fargo Bank teller, Wendy Rojas, gave Owen $3,800, which he placed in a black
12 plastic bag and then left the bank. Rojas identified Owen at a photographic lineup and in court.
13     Employees at the Lucky Brand Store directly across the street from the Wells Fargo Bank
14 recognized Owen from the video stills taken during the robbery. Daryn Hon, a Lucky store
15 employee, testified that, between 3:00 and 4:00 p.m on November 25, 2009, Owen came into the
16 store, purchased a black thermal shirt and a pair of jeans, and wanted to wear the clothing out of
17 the store. Hon removed the sensor tag on the jeans and helped Owen remove the tags from the
18 other clothing. Owen was sweating profusely and had a roll of $100 bills in his pockets. Owen
19 paid for the clothing with three $100 bills. In a photographic lineup, Hon identified two
20 photographs as resembling the customer he helped; one of the photographs was of Owen.
21     Chris Canotal also was working at the Lucky store the day of the Wells Fargo robbery. He
22 saw Owen enter the store with a black plastic bag and assisted him in purchasing the black thermal
23 top, a black shirt and black jeans. Owen changed into the new clothes and wore them out of the
24 store, leaving the clothing tags in the fitting room. Two of Owen's fingerprints were found on a
25 Lucky clothing tag. Canotal identified Owen in a photographic lineup and at trial.
26     On December 23, 2009, at approximately 4:30 p.m., Owen robbed the Citibank branch
27 located in the same building as the Wells Fargo Bank branch that was robbed in November.
28 Ramon Andrada, the teller, gave Owen approximately $1,900, including money that contained a

tracking device. Andrada identified Owen in a photo lineup and in court.

Owen was arrested on the day of the Citibank robbery. Malinda Ladson, Owen's girlfriend, was with Owen when he was arrested. She had a $20 bill in her purse with an electronic tracking serial number matching an electronic tracking number from the Citibank robbery. A pair of Lucky brand jeans, a long-sleeve black Lucky brand thermal shirt and a black baseball cap was found in Owen's car. The baseball cap appeared to be the same type as the cap worn by the robber in the Wells Fargo and Citibank surveillance footage. Exh. D, *People v. Owen*, A 128572 at 2-4.

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). In this case, the highest court to issue a reasoned decision on Owen's petition is the San Mateo County Superior Court.

## DISCUSSION

I. Ineffective Assistance of Counsel Claims

To prevail on a Sixth Amendment claim for ineffectiveness of counsel, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.

*Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.*

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1410-11 (2011); *Premo v. Moore*, 131 S.Ct. 733, 740 (2011). The general rule of *Strickland*, *i.e.*, to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). In addition, "the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 134 S.Ct. 10, 17 (2013) (internal citations omitted).

A. Failure to Challenge Tainted Identification

This claim is based on a letter that Wells Fargo Bank teller and victim Wendy Rojas sent to the trial court after the jury delivered its verdict and before Owen was sentenced. Rojas identified Owen at a January 4, 2010 pretrial photo line-up and in court. Reporter's Transcript ("RT") 111-12; 120; 128-32.

The letter, in pertinent part, states the following:

> After the incident I felt like I had failed my job because with the right state of mind I could have done things differently. . . . When I found out that the authorities had someone in custody and then saw that it was the person who robbed me on November 25, 2009, I felt relieved. The fact that I would then have to appear in court and see him again scared me. It made me feel like I was putting myself at risk because he already knew where I worked, but he could be finding out my name and would have a chance to remember my appearance. There was a chance that he could not be convicted, and

4

>that he could come after me.  I did my own research and found out that he had been a sex offender to young women like me and that terrified me even more.  It could be someone's daughter, or little sister, niece, a loved one, and I am glad to say that I helped pull a dangerous man off the streets and into the hands of the authorities to help keep the streets safe.  That is all I would really like to state, and thank you for your time.[1]
>
>Sincerely,
>
>Wendy Rojas

Dkt. 1-2 at 5 (letter); RT at 475 (at sentencing hearing, court mentioned receiving a witness letter).

Owen argues that this letter shows that Rojas conducted a "secret investigation" of him between December 29, 2009, when she learned of the Citibank robbery, and January 4, 2010, when she identified him at the photo lineup.  But Owen fails to cite any evidence showing that Rojas's "research" was done before she identified him in the photo lineup.  To the contrary, Rojas testified at the trial that, at the time she was shown the photo lineup, she did not know the names of any of the six individuals depicted in it.  RT at 131.  The photo lineup itself did not bear any names.  *Id.*  Owen fails to explain how Rojas could have learned his name, with which to research him, before the photo lineup.  As pointed out by the state court, the letter therefore provides no support for Owen's theory that Rojas's identification of him resulted from her research.  *In re Owen*, HC-2360 at 2.  Given the doubly deferential standard of review afforded counsel's performance in a habeas proceeding, Owen has failed to show that trial counsel was deficient in failing to submit a motion for a new trial based upon Rojas's letter.

Even assuming counsel was deficient in failing to move for a new trial, the state court reasonably concluded there was no reasonable likelihood of a different result had the letter impeached Rojas.  Rojas's identification of Owen was corroborated by the two clerks who worked in the Lucky store directly across the street from the Wells Fargo bank.  They testified that, minutes after the Wells Fargo robbery, Owen entered the Lucky store carrying a black plastic bag, like black bag the Wells Fargo robber used for the stolen money.  Ex. D at 2; RT at 116, 121, 177, 211.  They testified that Owen purchased clothing by paying for it with three $100 bills, changed

---

[1] Owen is identified online as a California registered sex offender.  *See* http://www.meganslaw.ca.gov/index.htm

into some of the clothing and wore it out of the store. Ex. D at 2; RT at 169-80. This evidence was inculpatory because the bank robber received hundred dollar bills, Lucky Brand items were found in Owen's trunk at the time of his arrest, and Owen's fingerprints were found on a clothing tag from the Lucky store. Exh. D at 2-3; RT at 321. A plain, adjustable black baseball cap like that worn by the Wells Fargo robber was also found in Owen's car when he was arrested. RT at 321-26. And the jury viewed the video surveillance footage of the robbery, thereby allowing it to make its own determination whether the person on the video tape matched Owen's description. RT at 125-27. Finally, evidence showed that Owen robbed the Citibank branch in the same building, at around the same time of day and in a similar fashion as the Wells Fargo robbery. Ex. D at 3. On this record, the state court was not unreasonable in concluding there was no prejudice. *In re Owen*, HC-2360 at 2.

Because Owen's claim for ineffective assistance of trial counsel fails, his claim of ineffective assistance of appellate counsel based on the failure to submit this claim on appeal also fails. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) (appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant); *Miller v. Keeney*, 882 F.2d 1428, 1434 n.10 (9th Cir. 1989) (weeding out weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy).

In his petition, Owen also asserts counsel was ineffective for failing to request a "Wade Hearing" based on the alleged invalid identification. But a hearing under *United States v. Wade*, 388 U.S. 218 (1967), to determine if Owen was deprived of his right to counsel at the pretrial photo lineup, was not required. Rojas viewed the photo lineup before Owen was arrested and, thus, before his Sixth Amendment right to counsel attached. *See Davis v. United States*, 512 U.S. 452, 456-57 (1994). Further, *Wade*'s requirement of counsel at an in-person lineup does not apply to photographic lineups. *See United States v. Ash*, 413 U.S. 300, 321 (1973).

B. Failure to Investigate

A defense attorney has a general duty to conduct reasonable investigations or to give reasonable consideration before deciding an investigation is unnecessary. *Strickland*, 466 U.S. at 691; *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (per curiam); *Cullen v. Pinholster*, 131 S.

6

Ct. 1388, 1407 (2011). *Strickland* directs that "'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Silva v. Woodford*, 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 691). Counsel need not pursue an investigation that would be fruitless or might be harmful to the defense. *Harrington*, 131 S. Ct. at 789-90.

Owen argues that counsel should have investigated the report of Belmont police officer Klyde Hussey because it "was fabricated." Dkt. No. 1-1 at 25. He contends that, if counsel had investigated, he would have uncovered dashboard camera footage depicting Hussey's observations on the day he arrested Owen. However, there is no evidence of a dashboard camera and, even if there was one, Owen does not describe what exculpatory evidence it would have revealed.

Owen also contends that an investigation of Hussey's report would have yielded favorable evidence of a tracking device that was embedded in the bills given to the Citibank robber. Contrary to Owen's assertion, counsel did investigate the tracking device, as demonstrated by his motion to exclude evidence about it, which the court denied. *See* CT 97-98; RT 19-24; 44-45. Furthermore, Owen provides no basis to support his contention that an investigation of the tracking device or the report concerning the movement of the device would have produced evidence helpful to his defense.

Accordingly, Owen has failed to show deficient performance or prejudice based on counsel's alleged failure to investigate.

II. Motions for Evidentiary Hearing and Appointment of Counsel

Owen moves for an evidentiary hearing regarding Rojas's letter to the court, a dashboard camera in Hussey's police car, and the tracking device. Owen would be entitled to an evidentiary hearing on disputed facts if his allegations, if proven, would entitle him to relief. *Perez v. Rosario*, 459 F.3d 943, 954 n.5 (9th Cir. 2006); *Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir. 1995). He is not entitled to an evidentiary hearing in light of the fact that he has failed to present any allegations which, if proven, would entitle him to relief, because none of his claims have survived review under 28 U.S.C. § 2254(d)(1).

Owen also moves for appointment of counsel. The Sixth Amendment's right to counsel

does not apply in habeas corpus actions. *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986). Appointment is mandatory only when the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986). As discussed above, Owen's claims have no merit; therefore, appointment of counsel is denied.

## CONCLUSION

Based on the foregoing, the Court orders as follows:

1. Owen's motions for an evidentiary hearing and appointment of counsel are denied. Dkt. Nos. 29 and 30.

2. Owen's petition for a writ of habeas corpus is denied. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

3. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

Dated: March 4, 2015

_____
VINCE CHHABRIA
United States District Judge